**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

MICHAEL ATTAWAY, Y55493,     )
                                   )
        Plaintiff,          )
                                   )
     vs.                  )     Case No: 23-cv-2091-DWD
                                   )
ILLINOIS DEPARTMENT OF     )
CORRECTIONS, et al.,         )
                                   )
        Defendants.      )

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF
EXHAUSTION OF ADMINISTRATIVE REMEDIES**

NOW COMES the Defendant, ILLINOIS DEPARTMENT OF CORRECTIONS, by and

its attorney, Kwame Raoul, Attorney General of the State of Illinois, and hereby submits its

memorandum of law in support of its motion for summary judgment on the issue of exhaustion of

administrative remedies, stating as follows:

**INTRODUCTION**

Plaintiff, Michael Attaway, was formerly an individual in custody of the Illinois

Department of Corrections and has since been released from IDOC custody. (Doc. 60). Plaintiff

filed his original complaint on June 16, 2023, while incarcerated at Shawnee Correctional Center,

alleging violations of his constitutional rights during his incarceration. (Doc. 1). Plaintiff filed an

amended complaint on September 19, 2023, while he was still incarcerated at Shawnee

Correctional Center.[1] (Doc. 11). On November 7, 2023, the Court conducted a merit review of the

amended complaint, pursuant to 28 U.S.C. §1915A, and allowed Plaintiff to proceed on an ADA

---

[1] Both the original complaint and the amended complaint raise an allegation of an ADA violation
against Defendant IDOC.

claim against the Illinois Department of Corrections for failing to provide Plaintiff with an ADA attendant from February 15, 2023, to the time of filing. (Doc. 18).

Defendant IDOC is entitled to summary judgment as to Plaintiff's ADA claim, based on Plaintiff's failure to exhaust his administrative remedies, as he is required to do under the PLRA because he was a prisoner at the time he filed suit.

## STATEMENT OF FACTS[2]

1. At all times relevant, including during the alleged events and at the time he filed suit, Plaintiff was an individual in custody within IDOC and housed at Shawnee Correctional Center. (Doc. 1 and 11). (*See also* Exhibit A – Plaintiff's Living Unit History, Bates 000109).

2. Plaintiff filed suit, pursuant to 42 U.S.C. § 12101, claiming the Illinois Department of Corrections violated his rights under the Americans with Disabilities Act by failing to provide an ADA attendant from February 19, 2023 until the time he filed suit. (Doc. 1 and 11).

3. Plaintiff alleges he began utilizing a cane on February 19, 2023, for mobility purposes, and since that time, he has needed an ADA attendant to assist him with various activities at Shawnee. (Doc. 1 and 11).

4. Harry Allard is currently employed with IDOC as a Clinical Services Supervisor and works in the Shawnee Grievance Office. (Exhibit B – Declaration of Harry Allard). His duties involve, among other things, maintaining a thorough knowledge of the records keeping system regarding grievances submitted at Shawnee. *Id.*

---

[2] These facts are undisputed only for the purpose of this motion. Defendant reserves the right to dispute any fact contained herein, should this matter proceed to further stages of litigation and/or trial.

5.  Mr. Allard reviewed the grievance records related to Plaintiff, at the request of the Office of the Attorney General, for grievances submitted for review between February 15, 2023 and September 19, 2023.[3] *Id.*

6.  Plaintiff's grievance records show he submitted a number of grievances during the relevant time period. Several of those grievances were fully exhausted at the facility level and were reviewed at both the first and second level. (Exhibit B) (*See also* Exhibit C – Plaintiff's Grievance Receipt Log, Bates 000097-000098). However, many of the grievances submitted were never submitted for second level review after receiving a first level response. *Id.*

7.  Of the grievances submitted by Plaintiff during the relevant time period, two (2) grievances are arguably relevant to this case, in that they contain complaints regarding Plaintiff's desire and/or alleged need for an ADA attendant.[4] (*See* Exhibit C) (*See also* Exhibit D – Plaintiff's Shawnee Correctional Center Grievance Records, Bates 000001-000069).[5]

8.  Plaintiff submitted a grievance dated February 24, 2023 (#2023-2-189), wherein Plaintiff notes the nature of the grievance is "ADA Disability Accommodation" and "Other: loose fitting pants." (Exhibit D, Bates 000005-000006). In said grievance, Plaintiff raises complaint that his pants no longer fit due to weight loss, and the loose-fitting pants make

---

[3] As explained below, Defendant believes June 16, 2023 – the date the original lawsuit was filed – is the operative date in analyzing exhaustion in this case. However, out of an abundance of caution, Defendant analyzed Plaintiff's exhaustion efforts through the date the amended complaint was filed, September 19, 2023.

[4] In addition to the two (2) Plaintiff also submitted a grievance dated February 7, 2023 (#2023-2-65), related to ADA accommodations, wherein he requests "a helper." (Exhibit D, Bates 00001-00002). However, this grievance pre-dates the allegations contained in the present suit and, therefore, cannot serve to exhaust his claims in the present case.

[5] Defendant has included all records of grievances submitted by Plaintiff during the relevant time period, including those that are not relevant to the claims in this case, for purposes of completeness.

it difficult to get around while utilizing his cane. *Id.* This grievance was received as an emergency grievance on February 27, 2023, was deemed a non-emergency on March 2, 2023, and Plaintiff resubmitted for traditional first-level review on March 13, 2023. *Id.* Records show Plaintiff never submitted this grievance for second level review after receiving the first-level response on March 15, 2023. (Exhibit C).

9. Plaintiff submitted a grievance dated June 13, 2023 (#2023-6-97), wherein Plaintiff notes the nature of grievance is "medical treatment," "ADA disability accommodation," and "staff conduct." (Exhibit D, Bates 000027-000028). In said grievance, Plaintiff raises complaints regarding the health care he has received at Shawnee, and requests an ADA assistant of his own personal choice. *Id.* This grievance was received for first-level review on June 14, 2023, and received a first-level response on August 18, 2023. *Id.* Records show Plaintiff never submitted this grievance for second level review after receiving the first-level response. (Exhibit C).

10. The Administrative Review Board ("ARB") maintains records of every grievance submitted by an individual in custody for third-level review by the ARB/Director. (*See* Exhibit E – Plaintiff's IGRV and ARB grievance records, Bates 000070-000096). Plaintiff's ARB records show he did not submit any grievances to the ARB regarding his request for an ADA attendant. *Id.*

## LEGAL STANDARD

### I.   Summary Judgment Standard

A court should grant summary judgment if the pleadings, discovery documents, and affidavits "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of material fact exists only if "the

evidence is such that a reasonable jury could return a verdict for the non-moving party.*" Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 248 (1986). The moving party bears the initial burden of demonstrating a lack of genuine issue of material fact. *Celotex Corp. v. Carett*, 477 U.S. 317, 323 (1986). The moving party may meet their burden by "showing…an absence of evidence to support the non-moving party's case." *Id*. At 325. After the moving party has satisfied their burden, the non-moving party must plead specific facts to show a genuine issue exists. Fed. R. Civ. P. 56; *Anderson*, 477 U.S. at 250. Disputes that would not affect the outcome of the suit will not satisfy the requirement to show a genuine issue of material fact exists. *McGinn v. Burlington Northern R.R. Co.,* 102 F.3d 295, 298 (7th Cir. 1996). If the plaintiff does not show evidence exists that would reasonably allow a factfinder to decide in the Plaintiff's favor on a material issue, the court must enter summary judgment against the Plaintiff. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

Courts generally cannot resolve factual disputes on a motion for summary judgment. *E.g., Nat' Athletic Sportswear, Inc. v. Westfield Ins. Co.,* 528 F.3d 508, 512 (7th Cir. 2008).  However, when the motion for summary judgment pertains to a prisoner's failure to exhaust, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust.  *Wagoner v. Lemmon*, 778 F.3d 586, 588-90 (7th Cir. 2015); see *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008).

## II.      Prison Litigation Reform Act

Under the Prison Litigation Reform Act (PLRA), all prison inmates bringing an action under 42 U.S.C. §1983 with respect to prison conditions or any other Federal law, must first exhaust all administrative remedies. 42 U.S.C. §1997e(a); *Pavey v. Conley*, 544 F.3d, 739, 749 (7th Cir. 2008). In addition, in order to fully exhaust administrative remedies as required by 42

U.S.C. §1997e(a), inmates must follow the rules laid out in the Illinois Administrative Code. *Riccardo v. Rausch*, 375 F.3d 521, 523 (7th Cir. 2004). Pursuit of administrative remedies is necessary no matter what relief the plaintiff seeks, including monetary damages. *Pavey*, 544 F.3d at 740.There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court. *Jones v. Bock*, 549 US. 199, 211 (2007). Exhaustion is not left to the discretion of the district court, but is mandatory. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).

The Illinois Administrative Code requires inmates to file a grievance regarding an issue at the institutional level within 60 days of the incident. 20 Ill. Admin. Code §504.810(a).  The grievance must contain factual details regarding each aspect of the inmate's complaint, including what happened, when, where, and the name of each person who is otherwise involved in the complaint.  20 Ill. Admin. Code §504.810(c). This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible. *Id*.

The Code specifies that the inmate must receive a response from the Chief Administrative Officer (CAO) of the institution (the Warden), and if the Warden denies the grievance, then the inmate may appeal the denial to the Administrative Review Board (ARB) within 30 days after the date of that decision. 20 Ill. Admin. Code §504.850(a).  An inmate can request that a grievance be handled on an emergency basis by submitting their grievance form directly to the Warden pursuant to §504.840; *Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir. 2005).  If, after receiving the Warden's response, the offender feels that the grievance has not been resolved to his satisfaction he may appeal the decision, in writing, to the Director (to the ARB) within 30 days of the Warden's decision.  *Id*. The Code further provides that an inmate grieving one of the following may submit a grievance directly to the ARB when grieving:

1. Decisions regarding protective custody placement, including continued placement in or release from protective custody.
2. Decisions regarding the involuntary administration of psychotropic medication.
3. Decisions regarding disciplinary proceedings that were made at a facility other than the facility where the offender is currently assigned.
4. Other issues that pertain to a facility other than the facility where the offender is currently assigned, excluding personal property and medical issues.

20 Ill Admin. Code 504.870, amended at 41 Ill. Reg. 3869, effective April 1, 2017.

Section 1997e(a) makes exhaustion of administrative remedies a precondition to filing suit. *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 535 (7th Cir. 1999). In order to exhaust his administrative remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require. *Pozo v. McCaughtry, et al.*, 286 F.3d 1022, 1025 (7th Cir. 2002). Unless a prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred. *Id*. At 1023. Exhaustion means using all steps that the agency holds out, and doing so *properly* so that the agency addresses the issue on the merits. *Id* at 1024. Further, the U.S. Supreme Court has held that a prisoner cannot satisfy §1997e by filing an untimely or otherwise procedurally defective grievance or appeal; proper exhaustion of administrative remedies is necessary. *Woodford v. Ngo*, 548 U.S. 81, 83, 126 S.Ct. 2378 (2006). (Citing *Pozo*, discussed *supra*, upholding a District Court ruling that a grievance not filed within 15 days as required by the Cal. Code. Regs. §3084 (c) fails to satisfy the requirements of § 1997e(a)).

The statutory purpose of requiring the prisoner to complete the administrative process is to give the prison administration an opportunity to fix the problem, or reduce the damages, and perhaps shed light on factual disputes that may arise in litigation even if the solution does not fully satisfy the prisoner. *Pozo v. McCaughtry*, 286 F.3d 1022 (7th Cir. 2002). To satisfy the statutory

purpose, a grievance must alert the prison to the nature of the wrong for which redress is sought. *Riccardo v. Rausch*, 375 F.3d 521, 534 (7th Cir. 2004). To allow otherwise would frustrate the purpose of the grievance process: to afford prisons the time and opportunity to address a prisoner's complaint internally and attempt to remedy the problem before initiating a federal lawsuit. *Porter v. Nussle*, 534 U.S. 516, 525, 122 S.Ct. 983 (2002).

## ARGUMENT

Prior to bringing the present suit, Plaintiff failed to exhaust his administrative remedies regarding the ADA claim he now raise for allegedly failing to provide an ADA attendant from February 15, 2023 until the time Plaintiff brought this suit on June 16, 2023. The PLRA requires any prisoner who is filing suit with respect to prison conditions under § 1983, or any other Federal law, to first exhaust all available administrative remedies *before the action is brought.* 42 U.S.C. §1997e(a) *emphasis added.*  The Seventh Circuit has taken a strict compliance approach to exhaustion. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Further, it has been firmly established that a "sue first, exhaust later" approach is not acceptable and cannot satisfy the PLRA's exhaustion requirement. *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020). In *Chambers* held that an inmate cannot cure a failure to exhaust by exhaustion during the litigation and then filing an amended complaint containing the same claims. *Id*. In this case, Plaintiff attempted to raise an ADA claim against IDOC in both the original complaint, as well as the amended complaint. (Doc. 1 and 11). Therefore, the date of filing of the original complaint, June 16, 2023, should be the controlling date in the exhaustion analysis.

Here, the records, as well as the timeline itself, make it abundantly clear that Plaintiff did not fully exhaust his administrative remedies as to his ADA claim regarding an ADA attendant prior to filing suit. Plaintiff filed the present suit on June 16, 2023. He first started utilizing a cane

– the predicate event for his request for an ADA attendant – on February 15, 2023. (Doc. 11). Plaintiff contends that in less than three (3) months, he started utilizing a cane and identified the alleged need for an ADA attendant, requested an attendant, was denied the request, filed a grievance, and then fully exhausted his administrative remedies through the three-step process utilized by IDOC. Even assuming he filed the grievance the same day he started utilizing a cane, it is highly unlikely the grievance would have enough time to navigate through the entire process set forth in the Illinois Administrative Code, for the grievance to be fully exhausted prior to commencing suit.

Furthermore, three months is insufficient time for Plaintiff to make a good-faith argument that the grievance process was unavailable to him. To the extent Plaintiff claims his grievances were lost/destroyed, such claims are directly refuted by Plaintiff's grievance records that show (1) several grievances were successfully exhausted at the facility level during that time period, and (2) that all grievances Plaintiff submitted received a response at the first level. (*See* Exhibit B and C). To say that some grievances were processed, while other grievances were purposefully lost or destroyed lacks any evidentiary support. There is no record that Plaintiff ever followed up on unanswered grievances regarding his ADA needs or complained of grievances being lost or destroyed. *See* Exhibit B and Exhibit C, generally. Plaintiff's grievance records *do* contain one grievance filed by Plaintiff in June of 2023, wherein he complains that he had not received a response to *other* grievances related to lost or stolen property. Exhibit B, Bates 000029-000030. But Plaintiff never raised this issue with any other grievances related to his ADA requests. At best, Plaintiff's complaint was filed prematurely, before he exhausted his administrative remedies. Alternatively, Plaintiff simply never even attempted to complete the process of exhausting his administrative remedies before filing suit against IDOC.

Records show Plaintiff submitted a number of grievances between February 19, 2023 and June 16, 2023; however, only two grievances are arguably related to Plaintiff's ADA claim regarding the denial of an ADA attendant after Plaintiff started utilizing a cane. (UMF ¶ 6 and 7). The first grievance (#2023-2-189), filed nine (9) days after Plaintiff began utilizing a cane, discusses Plaintiff's difficulties in getting around with his cane because his pants were loose-fitting. (UMF ¶ 8). The grievance does not even technically grieve that he was denied an ADA assistant; however, Defendant includes this grievance in its analysis because the issues raised regarding Plaintiff's pants are contained in the factual allegations that form the basis for Plaintiff's ADA claim in this case. Even if this grievance substantively meets the criteria to properly grieve the issues in this suit, this grievance does not serve to exhaust Plaintiff's administrative remedies because he failed to submit the grievance for second-level review after receiving the first-level response. (UMF ¶ 8).

The same is true for the only other relevant grievance submitted during this time period. The second grievance (#2023-6-97), filed three (3) days before Plaintiff brought the present suit, discusses Plaintiff's dissatisfaction with the medical care he has received at Shawnee for various injuries/ailments. (UMF ¶ 9). The copy of this grievance provided by IDOC is difficult to read in parts, but in his request for relief, Plaintiff requests an ADA assistant of his own personal choice. *Id.* Similar to the first grievance, Plaintiff failed to submit the grievance for second-level review after receiving the first-level response. *Id.*

As further evidence that Plaintiff failed to complete the grievance process set forth in the Illinois Administrative Code, Plaintiff's ARB records show he did not submit any grievances related to his request for an ADA attendant to the ARB for review, prior to filing the present suit. (UMF ¶ 10). The records are clear that Plaintiff failed to exhaust his administrative remedies as to

his ADA claim, despite the availability of said remedies and Plaintiff's knowledge of the grievance process. As such, summary judgment is appropriate, and this Court should dismiss this matter.

WHEREFORE, for the above and foregoing reasons, Defendant respectfully requests that this Honorable Court grant its motion for summary judgment on the issue of failure to exhaust administrative remedies, enter judgment in its favor, and grant any other relief deemed just and proper.

Respectfully submitted,

ILLINOIS DEPARTMENT OF CORRECTIONS,

Defendant,

Jennifer Powell #6310553
Assistant Attorney General                    KWAME RAOUL, Attorney General
Metro East Office                             State of Illinois,
201 West Pointe Dr., Ste. 7
Swansea, Illinois 62226                            Attorney for Defendant,
Phone: (618) 236-8781
Fax:    (618) 236-8620                         By: s/Jennifer Powell
Email: Jennifer.powell@ilag.gov                    Jennifer Powell #6310553
gls@ilag.gov                                       Assistant Attorney General

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| MICHAEL ATTAWAY, Y55493, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No: 23-cv-2091-DWD |
| | ) | |
| ILLINOIS DEPARTMENT OF | ) | |
| CORRECTIONS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on July 15, 2024, the foregoing document, *Memorandum of Law in Support of Defendant's Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies* and Exhibits A-E, were electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

None

On July 16, 2024, the above-mentioned documents were mailed via the US postage system to the *pro se* Plaintiff, at the following registered address:

Michael Attaway
7648 S. Normal
Chicago, IL 60620

Respectfully submitted,

s/ Jennifer Powell
Jennifer Powell #6310553
Assistant Attorney General
201 West Pointe Dr. Suite 7
Swansea, IL 62226
Phone: (618) 236-8784
Fax: (618) 236-8620
E-Mail: jennifer.powell@ilag.gov
& gls@ilag.gov